JOSHUA JOHNSON *vs.* THOMAS J. EVANS.—*December*, 1849.

A father, in behalf of his son, then a minor, made a conditional bargain with defendant for the purchase of certain lands, subject to the assent of his son, when he attained age, and under this contract advanced to defendant large sums of money for the use of his son, and which, at the time the several advances were made, he intended to give his son. On attaining age, the son refused his assent to this contract. HELD:

That in contemplation of law, the money so advanced belonged to the son, and that he could recover it back from the defendant in an action for money had and received.

It is no objection to such recovery, that the contract for the purchase of lands was by parol, and, therefore, void under the statute of frauds.

When the contract is wholly rescinded, either by mutual consent of the parties, or by virtue of a clause contained therein, the common count lies to recover money paid under the agreement.

If this purchase was intended as an advancement in land to the son, subject to the provision that, on attaining age, he might affirm the purchase, or annul it, and treat the advances so made as a debt, then, as the money was only to be the debt of the son, by an election, which could not be made

under a void contract, it was, in legal contemplation, the money of the father, and the son could not recover it.

Where an instruction excepted to, would not enable the plaintiff to recover more than the verdict would otherwise give him, this court will not reverse the judgment, on account of its being granted.

The plea of limitations is no bar, where it is proved that the defendant, within three years of the commencement of the action, acknowledged the existence of the debt, without any refusal to pay, or excuse for not paying it.

Appeal from *Allegany* county court.

This was an action of *assumpsit* brought by the appellee against the appellant. The declaration contains the general *indebitatus assumpsit*, and money counts. Pleas, *non assumpsit* and limitations, in the two usual forms.

1ST EXCEPTION. At the trial, the plaintiff offered the testimony of *Hugh W. Evans*, taken and read by consent. Witness is the father of the plaintiff, who came of age in February 1841. In 1839, witness made with the defendant *(Johnson,)* a contingent arrangement on behalf of his son, the plaintiff, for the purchase of certain lands in *Allegany* county, which was to be ratified or annulled by plaintiff at his discretion, on attaining majority. In pursuance of this arrangement, witness advanced to *Johnson* large sums of money, at various times, between the 27th of July, 1839, and the 17th of May, 1840, amounting to $6,397.14, including interest. That these advances were on account of the plaintiff, and that it was distinctly agreed and understood between *Johnson* and witness, that the former was to pay back the money, with interest, to plaintiff, in case he should decline the arrangement on attaining his majority, and that *Johnson* was to have a reasonable time in which to make such re-payment. That plaintiff, shortly after attaining age, declined to carry out this arrangement, and gave notice thereof to defendant in the presence of witness, early in March, 1841. No agreement in writing was ever entered into between the parties. Witness took the benefit of the insolvent laws in May 1843; but at the time he made these advances to defendant, he considered himself worth at least $120,000, over and above all his liabilities. Witness further proved, that in a conversation held with defendant, in August

1845, the latter said he would prefer to secure the debt due the plaintiff, by will, to which witness replied, that that was not the understanding, and that he did not believe plaintiff would accede to such an arrangement. That defendant acknowledged having received these advances on account of the plaintiff, and said nothing which would induce witness to believe that he intended or proposed to evade payment of the debt. The plaintiff further proved, by *M. T. Evans,* that witness was present at a conversation between the plaintiff and defendant, in reference to this matter, in November or December, 1845, when the latter proposed to liquidate this claim by giving the plaintiff land at a price. There was no other account than this between the parties.

The defendant then proved, by *Jacob Angell,* that some 7 or 8 years ago, *H. W. Evans* and defendant came to witness' house, where a conversation occurred about the land of the latter, in *Allegany*—the large tract; that *Mr. E.* was to give defendant $45,000 for one-half of that tract, and to pay him, as the latter wanted it, for re-building his mill, which had been burned. Plaintiff was not present. He understood that defendant was to draw the money as he wanted it, and the sums so advanced, were to be so much on the purchase. The defendant further proved, by *Thomas Hammond,* that witness is acquainted with the lands of the defendant in *Allegany.* The large tract contains fourteen thousand eight hundred acres, and that, in 1839, $45,000 was not, in witness' opinion, a high price for one-half thereof.

The defendant then prayed the court to instruct the jury, that if they find that the agreement, as proved by the plaintiff, related to the sale of lands, or some interest in or concerning the same, and was not in writing, then said agreement is void under the statute of frauds, and the plaintiff is not entitled to recover, because his right so to do, is founded upon the validity of such agreement. Which direction the court (MARTIN, C. J., and MARSHALL and WEISELL, A. J.,) refused to give, but instructed the jury :

1st. If they find that there was a parol contract between *H.*

*W. Evans* and defendant, for the purchase of the land mentioned, and that this purchase was intended as an advancement in land for the plaintiff, with the provision, that plaintiff might, when he attained age, elect to affirm the purchase, or annul it, and treat the advances so made as a debt, and that the payments so made to defendant, were made with the money of *H. W. Evans,* in pursuance of this contract, then, as the money so advanced was only to be considered as the debt of the plaintiff by an election, which could not be made under a void contract, it was, in legal contemplation, the money of *H. W. Evans,* and the plaintiff is not entitled to recover.

2nd. But if they find, that the money with which *H. W. Evans* made the several payments to defendant, on the parol contract stated in the testimony, was money which he had given to his son, or intended to give to him, at the time the respective payments were made, and that the said payments were made for the use of the plaintiff, then, in contemplation of law, the money in controversy belongs to the plaintiff, and he is entitled to recover.

To which refusal, and to the granting of the 2nd instruction by the court, defendant excepted.

2ND EXCEPTION. The plaintiff then offered this prayer, "that if the jury find, that at the time the said *Hugh W. Evans* paid the money to and for the use of the plaintiff, he intended it as an absolute gift, and that it was not, in any event, to be repaid, or to come back to said *Evans,* but was to be the plaintiff's, then the plaintiff is entitled to recover whatever sum the jury shall believe was so paid for him; provided they also believe, that defendant acknowledged the existence of said debt as due to the plaintiff at any time within three years before the commencement of this suit." Which was granted, and defendant excepted.

3RD EXCEPTION. The plaintiff then offered his 2nd prayer, that if the jury find, that defendant, within three years before the commencement of this action, acknowledged the existence of the debt as due from him to the plaintiff, without any refusal to pay, or excuse for the non-payment thereof, the statute

of limitations is not a bar to a recovery in this case; which was granted. The defendant excepted, and the verdict and judg-ment being against him, appealed to this court.

The cause was argued before DORSEY, C. J., CHAMBERS, and MAGRUDER, J.

By PRICE, and PERRY, for the appellant, and
By McKAIG, for the appellee.

MAGRUDER, J., delivered the opinion of this court.

The declaration in this case contained the several money counts. A verdict was rendered for the appellee, and of this verdict the appellant cannot complain, unless he can show that it was, or might have been the result of erroneous instructions given by the court to the jury, in the course of the trial.

There was evidence tending to prove that the appellant did receive money as the money of the appellee, and the former had to prove that it became his money in consequence of some valid contract made by a person authorised to dispose of it, and to vest the title to it in him.

The appellant insists, that the appellee cannot recover in this case, because, according to the proof, the money was received by him (the appellant,) under an agreement for the sale of land, which, not being in writing, is void by the statute of frauds. No doubt the contract in relation to the land, could not be enforced, especially at law, not merely because it was not in writing, but also because, by the terms of it, the appel-lant was to remain the owner of the land, if the appellee, when he came of age, refused to purchase (to make a valid contract for) it.

According to the proof, no purchase was made by the ap-pellee, and he cannot now claim the land. It is immaterial, then, whether the contract was in writing or not. It was not understood to be a contract actually made, and not to be al-tered, but with the consent of both parties, but, as a witness states, it was a contingent arrangement, to be binding on the

parties, if the appellee afterwards assented to it. It was certainly no part of that arrangement, that the appellant should retain the money which he then received, whether he parted with his land or not. To the contract thus made for him, the appellee refused to assent. To whom does the money received under such arrangement or understanding belong?

The contingent arrangement is now not to take effect; upon what principle, then, can the appellant claim a right any longer to withhold the money? "When the contract is wholly rescinded, either by the mutual consent of the parties,,or by virtue of a clause contained therein, the common count lies to recover money paid under the agreement." *Chitty on Contracts*, 624. See, also, 1 *Henry Blackstone*, 65. *Cowper*, 197.

If the appellant is to retain his land, surely he is not to retain money which he received, because it was to be a payment of so much of the purchase money, provided the owner of the money afterwards consented to be the purchaser of the lands. The money is in the hands of the appellant; yet it is not to be his money, unless it becomes a part of the purchase money to be paid for land when purchased (by a valid contract, of course,) by the appellee, from the appellant. It is money received by the latter for the former, if it be not a payment, and it is not to be a payment unless a valid sale of the land afterwards takes place.

What has been said, is sufficient to show that the court did not err in refusing to instruct the jury, that if they believed that the agreement, as proved by the plaintiff, (appellee,) related to the sale of lands, and was not in writing, the same was void, by the statute of frauds, *and the plaintiff is not entitled to recover*.

To the first instruction, which the court, according to the record, gave to the jury, the appellant cannot object.

The second instruction required the jury to find, from the testimony, that the money with which the witness *(H. W. Evans,)* made the several payments to the appellant, on the parol contract, was money which he had given to his son, or

intended to give to him, at the time when the payments were made, and that said payments were made for the use of the plaintiff, (appellee;) and if they were so satisfied, then the money in controversy belonged to the plaintiff, and he was entitled to recover.

This case may be regarded, and, in fact, is a contract made, or attempted to be made, by one person for another, its validity to depend upon the subsequent assent of the latter. The money received by the intended vendor, whether it was obtained by loan or gift, the jury was authorised, by proof in the case, to consider as the money of the appellee, to be recovered back by him, if the contract was not ratified.

In deciding any of the questions which this record brings before us, we are not to enquire, what were the circumstances of the father of the appellee, at the time when any of the money claimed in this suit was received by the appellant. Whether he could afford to give so much money to any one of his children, is a question which does not belong to this case.

Another prayer, so far as it asked the court to say to the jury, that the money was the money of the appellee, if the facts therein stated were proved to the satisfaction of the jury, is correct. In this prayer, however, it is insisted, that the court was asked to assume, and in granting the prayer did assume, that *H. W. Evans* paid the money to and for the use of the said *T. J. Evans*. This, it must be granted, was telling the jury that some money was paid by the former for the latter. But, could this prejudice the defendant in the court below? The jury were to find when the money was received by the appellant, the amount received, and *quo animo* he received it, and without proof, which satisfied them, that the sums of money received by the appellant, for the appellee, were sufficient to sustain the jurisdiction of the court, a verdict for the plaintiff would, in effect, have been a verdict for the defendant. In the case of the *Turnpike Company vs. Barnes*, (6 *H. & J.*, 57,) the verdict was (in consequence of a misdirection by the court,) for the defendant, when it ought to have been for the plaintiff, but for a sum less than $50, and, of

v. 8

course, the plaintiff would have been non-suited.   The court, for this reason, affirmed the judgment.   In this case, it is obvious that the words of the instruction, to which an exception is taken, do not enable the plaintiff to recover one cent more than the verdict would otherwise have given him.   There was nothing in the exceptionable words which could mislead the jury.

There is no error in the last instruction.   The plea of limitations could be no bar to a recovery, if the jury were satisfied, that within three years before the commencement of the action, the defendant acknowledged the existence of the debt, without any refusal to pay, or excuse for not paying it.

Upon an examination of the record in this case, we do not discover any ground for a reversal of this judgment.

JUDGMENT AFFIRMED.

DORSEY, C. J., dissented.